The first case is Christopher George and others v. Starbucks. Good morning, Your Honor. May it please the Court, my name is David Gottlieb from Wigdord, LLP for the Plaintiffs' Covenant. This is an appeal in which the Court granted the defendant's motion to dismiss claims asserted under GBL 349 and 350. The essence of the allegations is that Starbucks engaged in deceptive consumer conduct by using a poisonous pesticide in the same area where it prepared beverages and food products, and by not disclosing that to its customers. The lower court incorrectly granted the motion to dismiss primarily for two reasons. First, the court incorrectly determined that Starbucks' representations to the public, that is, products, are mere puffery. And the second is that the lower court failed to consider that Starbucks could be liable under the GBL for material omissions. And I'd like to first, Your Honor, to address puffery. Puffery, as applicable here, is designed— —advertisements, but apparently the plaintiffs only saw four of them. And how—can you rely on the ones that the plaintiffs never saw? Well, Your Honor, the case law says that so long as a reasonable inference can be drawn from the allegations of the complaint that the plaintiffs relied on misrepresentations, that there's liability under the GBL. Well, but the question is which misrepresentations did they rely on? If they only relied on advertisements one through four and didn't read, for example, the SEC filings, can they argue the SEC filings now in a GBL claim? Well, Your Honor, if you look at all the GBL cases, so in both sides of Greece, one takeaway from all of it is that what's important to look at is not an individual statement or misrepresentation by a company, but the totality, the context of everything. And what our position— And what's the reasoning for that? We can look at statements that they didn't read because it's part of the totality of the circumstances? Well, what's important here, Your Honor, I think, is that it's a Starbucks advertising campaign, an entire campaign that our clients relied on. And so whether each particular client—each particular plaintiff, excuse me—saw each particular advertisement, I don't think that is material. What's material is what takeaway—what was the overall takeaway from Starbucks' advertising campaign? And Starbucks' advertising campaign contains numerous statements. And one thing I think the Court got wrong, the lower court, is that our claim is not merely that Starbucks holds itself out as having the best coffee or perfect coffee. It is—their advertising campaign goes far beyond that. Their advertising campaign gives reasons why it's the best, and that is because it has a very strict, very close quality control mechanism. And these advertisements that are part of this overarching campaign include—these are just a sampling of the statements Starbucks makes— that their products are nurtured from farm to cup under our watchful eye, watched over us by us like control freaks from the farm to you with ingredients you would use from home. Isn't this classic puffery? No, this is not puffery. Puffery, I would concede, frankly, Your Honor, if Starbucks said merely this is the best coffee, this is perfect coffee, that alone, stated by itself, would constitute puffery under the case law. But what is the overall message, the overall takeaway? That it's the best coffee. Well, no, from saying only that it's the best, but by saying—if I go much further than that and say watch under our watchful eye from farm to cup like control freaks, the question is, Your Honor, what would a reasonable consumer—what would a reasonable consumer take away from that? And no reasonable consumer, hearing those things, would expect that they are getting a product that's made in close proximity, at the point of sale, next to poisonous pesticides. And, Your Honor, Your Honor, this is—all we need to allege at this point is plausibility. Is it plausible that a consumer, hearing these representations from Starbucks and its advertisements, is it plausible that they would think they're getting a product free from poisonous pesticides at the point of sale? Is it any reasonable—what's the standard? Any reasonable consumer or reasonable consumers? The objective reasonable consumer. The objective reasonable consumer. And, Your Honor, a number of courts say that it is not the court's determination— Is there an issue of materiality here? In other words, would a reasonable consumer care? Yes, materiality is important. And whether an objective reasonable consumer would care, this is the point I was just getting to, Your Honor, is so long as we allege plausibility, that's an issue that requires, at the very least, some discovery. And I'd like to read a quote from the late Judge Weinstein, the Bryson v. Yellow Book case. And he said—his Honor said, what the defendant intended to communicate and what was communicated to the attendant communicant is important, not what a communication means to a judge. So this is why I come back to all that needs to be alleged at this point is plausibility. Let me ask you this. I mean, I understand your position is the overall takeaway is more than just the best coffee. And by using these pest strips, it's providing not necessarily, you know, the best quality control. Is that a false advertising claim? I mean, it sounds more like a breach of implied warranty of habitability type situation. It's not habitation. But it doesn't seem like a claim that is where consumers are being deceived. Well, Your Honor, so long as it's misleading, then it qualifies as a procedure. Just to follow up on that, what is the misleading nature of that statement? I'm having trouble, frankly, and you put it in terms of plausibility, but I would put it in terms of understanding what exactly, precisely is misleading about the statements. Your Honor, no reasonable consumer. There's the affirmative misrepresentation. And then there's the omissions. I have 10 seconds, so I'll try to go quickly. With respect to affirmative representation, the entire advertising campaign of Starbucks is not merely that it is the best. It is that they watch this coffee like a control freeze from the farm to you with ingredients you use. And what is false about that? The question is not what is that literally said. The question is what is the common-sense, reasonable takeaway. And then there's also the question of omission. Did Starbucks know something that's material and fail to disclose that to consumers? And, Your Honor, I would submit that no reasonable consumer, either hearing these representations or think they're getting a cup of coffee made next to poisonous pesticides, and no reasonable customer would pursue On the omissions theory, I just want to explore that just briefly. Usually in other contexts, in a fraud context, for example, we require some form of fiduciary obligation. We require something more when we rest a claim of fraud on an omission. Here, what's the theory of omission? In other words, why must every company that's consumer-oriented say everything in its ads? Which is what the slippery slope of this omissions theory may be at that point. Your Honor, there may be some cases that create a slippery slope. But the question is really materiality. Is this material information a reasonable consumer would expect to know? But what is the duty to disclose? So materiality is one issue. I'm focused on what triggers a duty to disclose here. Well, Your Honor, it's just the duty under the GPL is that a company cannot engage in deceptive or misleading conduct by selling products that are made in close proximity to a poison pesticide that they know this is happening and not disclosing that. That is misleading if any reasonable customer would want to know that fact. And so there are cases that all we need to prove under GPL 349, under the omissions theory, is that the defendant possessed material information about the product, and the defendant failed to provide that information to the customer, and Starbucks here failed to disclose to customers that there were poisonous pesticides in the same place or product. Counselor, your time has expired. You have reserved three minutes for rebuttal. We'll hear from Starbucks. Good morning. I'm Greg Silver from Weill for Starbucks. Judge Nathan wrote a very careful decision in this case. In our rebuttal, he got it exactly right. Every statement that the plaintiff challenged, except the one that was clearly popular. Can I pick up where we left off with opposing counsel on what was required? The plaintiffs allege in their complaint that although Starbucks purports to have a zero tolerance policy for the use of DDVP during its supply chain processes, including for use by farmers and producers from which it sources its beans, it does not tell consumers that this policy ends at the storefront. Isn't that correct? The plaintiffs do allege that, Your Honor. That does not add up to an omissions claim for two reasons. Well, they allege it and they cite your handbook. It's the Starbucks Coffee Company handbook. Right, so the Starbucks Coffee Company handbook. It says zero tolerance. I'm just reading from farms that do not use pesticides. So that they start there saying that there's no pesticides in our supply chain, but they stop at the door to the commercial operation in the city. Right, so, Your Honor, to allege a claim under GDL 349 or 350, they first need to allege consumer-oriented behavior, and the Starbucks handbook that they point to is not consumer-oriented. I understand it's not consumer-facing, but they do allege purity in their entire operation. Isn't that part of what the ads that were submitted as part of the complaint show? Purity? Your Honor, I think the ad that you're referring to is page 66 of the appendix, and what it says is the beans are nurtured for men to cut or have farms cut. It doesn't say anything about the use of hygienic products in the Starbucks stores. I think if you look at Plaintiff's reply brief when they tried to defend their emissions claim, and by the way, they never asserted wanting their complaint to run their wreaths below, or abuse agent in this court, but when they tried to defend it in their reply brief in this court, they no longer rely on that statement about zero tolerance policy that Your Honor referred to, and I think the reason they abandoned it, and they were right to do it, is that that statement is not a consumer-facing or consumer-oriented act or piece of paper. So what the Plaintiffs turn to instead is the statement, and you'll find it at page 64 of the appendix, that there are no artificial dyes or flavors in the baked goods, and there are two problems with that. One of the problems is the one that Judge Chin referred to. The Plaintiffs categorically do not allege that they saw that statement or were ever aware of it, and as this Court held with Dvicek just earlier this year, and as the New York Health Division has held multiple times, if a statement, if that statement is not seen by the Plaintiff, or the Plaintiff is not aware of it, then that statement could not have caused the Plaintiff's injury, and because these Plaintiffs unambiguously do not allege that they saw or were aware of any statement, that there were no artificial dyes or flavors in the coffee, that statement could not have caused their injury under an affirmative misrepresentation theory or an admissions theory. The second problem with their reliance on this statement is they don't allege that it's false. There's no allegation in the complaint that there was any artificial dye or flavor in the coffee, and the fact that when I'm taking all the Plaintiff's frequently false allegations as true about the use of hygienic products in these stores, it does not render a statement about that. Well, the Plaintiffs concede that if all they had were this is the best coffee, this is perfect coffee, that that would be puffery. What do you do about the argument that the overall takeaway is that when you come into a Starbucks, this is a superior environment, the strictest quality, and it does seem that using a dangerous pesticide would be inconsistent with that suggestion. How do you respond to that? The problem, Judge Finn, is that it's puffery, you'd be getting more puffery. So the Plaintiff's saying, well, you know, when you're going to— Well, whether something is a clean and safe environment, is that puffery, or can you verify that? I mean, if the place is filled with mousetrappings and roaches, that probably would contradict that it's a safe and clean environment. Your Honor, let's step back here for a second. This is a class of people who were not injured by the conduct that they watched happen, right? So if somebody was injured, then absolutely they would have a claim on the kind of theory that you mentioned, the five-word capability, some kind of thwart theory. But none of that happens. But the GPL doesn't require that, does it? No, exactly. So that's why the Plaintiffs are bringing their claims as false advertising. Correct. Because they were not injured. And to make out that theory, they have to prove some kind of injury that results from the content of the Starbucks ads, not just the quality of their experience in general. And what the ads say is, the ads that the Plaintiffs saw, and we quote them in pages five to six of our brief, the best coffee for the best view, if it's not Starbucks, it's a compromise. I mean, things that are clearly puffery. What in your—I mean, I'm asking you to do something that's perhaps contrary to your immediate interest, but what in your mind would cross the line beyond puffery into a false advertisement? Well, I think you can look to this Court's decisions and see the answer. But in the context of this case, for example, what would cross the line? What kind of statement could Starbucks have made about using a high-quality product? If Starbucks had said something like, when you enter a Starbucks store, only organic, clean products are used, and it turns out that this particular product is not organic, then, yeah, that would be a clear— Not only not organic, but dangerous to humans. So they let go. Again, nobody was harmed in this case, not a single person. Well, we're dealing with the allegations of the complaint, which we take as true at this stage, don't we? Yes, we absolutely do, Your Honor. I think the question is, did plaintiffs form meetings based on the content of these advertisements? It's not, as Judge Shinn said, this is not an implied warranty and profitability claim. It's not a court theory, right? Nobody is alleged to have taken orange by supposed to be dangerous product. All these plaintiffs are saying is they viewed four advertisements, and you see them quoted at each, because five or six of our briefs, they're clearly puffering. Let me ask you about one of our decisions, the McDonald's case. The advertisement said the food is nutritious, leaner than you think, well within the established guidelines for good nutrition, can easily be part of a healthy lifestyle. And we held that those were statements that could be proven true or false. They seem to be in the ballpark of the statements in this case. The whole thing of the McDonald's case was a little bit different, Your Honor. If you read it, the question that the court answered was, is there a heightened bleeding standard? And the court said, no, remember this was a pre-involvement decision. It didn't actually weigh in on the validity of the plaintiff's theory. And, in fact, the advertisements that the plaintiffs challenged in that case went much farther than the general summary description. The court used the purposes of that decision. They talked about the efficacy of crunch oils being used and things like that. But, look, you held, Judge Chin, just last year in Chen against Duncan Brantis, that whether a statement is misleading to a reasonable consumer is a question that can be resolved as a matter of law. And, in fact, you and the rest of the panel in that case went on to find that the statements there were not accepted. And the court did the same thing in the Get Care Gets Cooked Whole case there. That was just 2019. There the court held that Diet Coke will not really release this property. That is, if anything, more specific than Starbucks has the perfect coffee or the best coffee for the best meal. But you're suggesting that the McDonald's case has been not quite abrogated, but we should see it in light of the plausibility standards so that the standard has heightened. Is that correct? Well, I would say two things, Your Honor. Thank you for allowing me to clarify. First, the question before this court in the McDonald's case was about these. The district court there had said that the plaintiffs had to allege other facts, that, for example, what else did they eat? Or did they have a family history of health conditions? And this court simply said, no, that's not what notice pleading requires under the complete default notice pleading standard. The second thing about the McDonald's case that this court did as a converse is that you did not say anything about the validity of the theory of that case. The underlying theory, yes. I stand over my time. Well, let me ask you about this. Would you just briefly address the omissions theory? Yeah. Points about the omissions theory. First of all, you asked a very important question. What is this duty to disclose? When is it triggered? When is it applied to? And there is not a word about that in the complaint, in the briefing below, or in the brief to this court. If such a duty existed in a fact, it would be enormously important. But the reason that Judge Nathan, in her very careful decision, did not discuss that theory is because the plaintiffs didn't argue it. So that argument did not make any sense. If you were to consider it, then, as you said again, Judge Levin, outside the context of the fiduciary relationship, there generally is not a freestanding duty to disclose it. The omissions theory requires an affirmative statement that is rendered misleading or false because of an omission. That's their argument, isn't it? That by not telling about this, by not disclosing the existence of this contaminant. And to make that argument, Judge Fuller, they have to point to a statement that Starbucks made that was misleading because of the omission. The only statement they point to in their reply brief is the statement that Starbucks goods contain no artificial dyes or flavors. Indisputably, they don't allege they ever saw or were aware of that statement, so they can't rely on it. But even if they could, that statement is true. It means exactly what it says. Starbucks baked goods do not contain artificial dyes or flavors, and the plaintiffs don't allege that the baked goods have artificial dyes or flavors. So there's no omission that renders that statement false. Thank you, counsel. Mr. Gottlieb, you retain three minutes for rebuttal. Your Honor, let me first address the issue of omission, which we did argue for the lower court. We argued in Doctrine No. 31, page 13, Starbucks has concealed that it has repeatedly allowed customers to be exposed to a pesticide that Starbucks acknowledged is highly hazardous and should not come into contact with any disingredients. As the Court of Appeals has explained, it is precisely this type of situation where a business alone possesses material information that is relevant to the consumer and fails to provide this information. The New York City Consumer Protection Laws are designed to address that. So we did make this argument. But that was the only sentence addressing the issue in the papers below, right? Well, that was in a section on why Starbucks has come up with this statement. In terms of the question about omission-based theory, there was one sentence. Is that fair? Well, I would say that's not fair because I think it's our overarching argument. It's I think clear from the entire complaint and from our papers is that Starbucks failed to disclose this fact. So do we have a separate section in the brief that said it has a big header, omissions? No, we didn't have that. But I think it's clear that this was part of our papers based on all the allegations of the complaint and what I just read. And, Judge Chin, you mentioned the McDonald's case. And the McDonald's case also had an omissions theory there. And part of the omissions in the McDonald's case was that McDonald's did not disclose to consumers that part of its food processing process rendered the food that they used less nutritious and less healthy. And the failure to disclose that to customers was among the deceptive misleading conduct that was out of the game shift. I think it was really important. One really important takeaway is I want to step away from what is – the way Starbucks tries to describe our complaint as merely alleging the use of the word best and use of the word perfect. It is really about what is the overall message communicated by Starbucks' advertising campaign. And I'd like to quote Judge Learned Hand, who in 1944, not in the TVL case, said, There is no surer way to misread any document than to read it literally. And so the issue is not what did Starbucks – what were the literal words of what Starbucks says in its advertising campaign. The issue is what is the overall message being communicated to customers. And when Starbucks says that its products are under a watchful eye, like control treats with ingredients you use from home, and that you're buying a cup of coffee from a company that cares, they are making a representation to the public that you are getting coffee that is under a strict quality control process, and no reasonable consumer would expect to be getting a product made in close proximity to DDPP, poisonous pesticides. And that's a question really a jury or at least a discovery of a virus. Thank you, counsel. Thank you both. Thank you. A reserved decision on this interesting case.